It's well settled by Shepard and its many progenies in the guideline context that documents which establish a criminal history enhancement must do so conclusively and unambiguously. This case presents the question of how to apply this principle to a judgment that is internally inconsistent, that it contains a facial contradiction as to a material element of a criminal history enhancement. The answer to that question should be clear enough from Shepard, but it was also resolved in Herrera-Solorzano, which is cited in the brief in 97, which says in clear terms that the government cannot discharge this burden of proof using a judgment that facially contradicts itself. Quoting Herrera-Solorzano, which deals with an enhancement under 2L1.2 for an aggravated felony which requires a term of confinement, the court said, the sole evidence before the district court was the state court judgment. That judgment standing alone is not sufficient to meet the government's evidentiary burden. The state court judgment is inconsistent on its face. Read literally, it purports to sentence the defendant to confinement by placing him on adult probation for 10 years. From the language of the sentence alone, it is not possible to discern with the required certainty whether the state court intended to assess a term of imprisonment and suspend imposition thereof or to place the defendant directly on probation. This case is similar. Here, the district court sustained 12-level enhancement for a prior offense of generic aggravated assault. The indictment in this case alleged the use of a deadly weapon, and the judgment listed the offense title as aggravated assault with a deadly weapon. And I concede that if that was all there was to the story, that these documents would satisfy the requirement of showing a generic aggravated assault. But the same judgment expressly withholds a finding that a deadly weapon was used involved in the offense, and that's consistent with a plea agreement that bargains for the exclusion of such a finding. It's important to note that the judgment is not merely blank. It's not merely that it has a section where the judge could enter a deadly weapon finding. It says no deadly weapon findings, no findings as to deadly weapon. Given this flat factual contradiction in the Shepard documents on this material element of the enhancement, namely whether the offense involved a deadly weapon, one plainly cannot say conclusively. Counsel, doesn't Hooks indicate that that no finding with regard to the deadly weapon, that that goes to eligibility for probation and parole and doesn't have anything to do with the underlying conviction for an offense that does involve a deadly weapon? Isn't that what Hooks says? I'm not sure. I think that what Hooks says is that a judgment that is unreformed, that is in this condition, is not void. And so the great weight of state authority says that if a defendant is found guilty of aggravated assault with a deadly weapon, the judge is required to enter a deadly weapon finding. And so the absence of a deadly weapon— There's authority to the contrary, isn't there? I don't know if Hooks is authority to the contrary. I don't know if it says that a judge is not required to enter that. It simply says that judgment is not void. Well, the cases you talked about in your 28J letter, I know it wasn't in your brief, but in your 28J letter seemed to indicate that as a matter of practice, there are instances where there can be a conviction. Involving a crime—involving the use of a deadly weapon. But then as regards eligibility for probation and parole, the judge can indicate no finding in connection with the use of a deadly weapon. It doesn't undermine the fact that there is this conviction for the use of a deadly weapon. Isn't that right? Hooks can be read to say that in some courts. That's a fair reading of Hooks. That might be a fair reading of Hooks. However, Hooks was not the law in 1990. Hooks was decided in 1993, and these convictions are 1990. The great weight of authority before and after Hooks says that it is inconsistent with a finding of aggravated assault with a deadly weapon to then find that there is no deadly weapon. And irrespective of the function or the meaning of this judgment under state law, federal law tells us—the question before this court is a federal question, which is what consequence does that judgment have? And there remains a factual contradiction between saying the defendant is convicted of—committed the offense of aggravated assault with a deadly weapon and the defendant—there is no finding as to a deadly weapon. Federal law tells us the effect, but state law tells us what it is. That's correct. Well, I mean in the sense that state law tells us what the effect of that might be under state law. State law doesn't purport to give any effect for federal purposes. It speaks for itself for state law purposes. Federal law then addresses the conviction for its own purposes of sentencing, and so we look at what the Shepherd—we look to those papers, and the question is whether we have a sufficient—we can determine from those papers what this is essentially. Correct? I'm not sure about that. If there were a judgment, for instance, that said the defendant is guilty, is convicted of this offense, I enter a special finding that the defendant is not guilty. Your argument was that the documents are equivocal at best because what might have been a plea to the requisite enhancement is muddied because it also contains the notation stating exactly the opposite, and on the record there's no explanation for that. I think that's precisely right, and I'm not sure that's undermined by Hooks, which says that a district court—I mean that the state trial court has the discretion not to withhold that finding. I intended no suggestion of that. I really was trying to get clear before us the respective roles of state law and federal law. Following up with your comment, I thought we needed to clarify that a bit. So I think that it's significant here, for instance, that Herrera-Solozano didn't look at what is the effect of this judgment, which purports to put the defendant in prison and on adult probation under state law. It simply took the judgment and said to a reviewing authority later on, this is inconsistent, and so because this is an equivocal judgment, it's impossible for it to have the requisite conclusiveness. What about preservation of error? Error is not preserved in this case. This is a plain error case. Sorry. Error is simply not preserved. The case is here on plain error. What about—do you think it's invited error? I do not. There's two reasons that it's not invited error. The first is that the district court, the federal district court, had already calculated the guidelines at the time that the defense counsel commented that this was a crime of violence or the guidelines treat this as a crime of violence. So it would be strange to say that comments by defense counsel invited conduct by the district court that had already occurred. The second reason is that I think all of those invited error cases are talking about situations where the defendant seeks a ruling from—or the parties seek a ruling from the district court in order to gain some kind of strategic benefit, something that seems like it would help the defendant at the time or the party at the time, and then complains of it later. The counsel wasn't silent about this underlying state court judgment. Not only did he not speak to the error that's now being addressed, he accepted it, stated it in the PSR, and used that in turn in his argument to the court itself for other purposes. Is that fair or not? I wouldn't say that she used that to the court. I think she attempted to deal with it. She attempted to mitigate the problem. She said the guidelines treat this as a crime of violence because everybody assumed that they did, but here are some reasons that this defendant does not meet the heartland. All of the invited error cases that have been cited here are cases where a district court would not have even reached an issue or dealt with an issue except that the defendant interjected it. The defendant raised the issue on their own. I agree with you. That's a classic invited error paradigm, but there's an intermediate range of conduct of counsel which I think to me is unclear, and that is the lawyer not only doesn't object, but he utilizes and accepts the validity of the attack as a predicate to push his own arguments. As a good advocate, he takes the record as it is and says okay, but then he uses that argument to the court for his own purposes of the case. That raises the question of whether that really leaves it as plain error or invited error. Those cases were distinguished between two kinds of those cases. One would be cases where the defendant is arguably better off, where there's a potential strategic consideration in accepting the record as it is and making the best of it, and then cases like this where there's no plausible value to a defendant in accepting a criminal history enhancement that might otherwise be contested. Would it matter? I'm sorry? Would it matter? I think it would matter a great deal because it's unfair to reverse a district court, vacate the judgment of a district court if the district court could have thought that the defendant is seeking this. It's a pretty high burden of itself to hurdle. It is. With that, I want to just touch a little bit on the— I think I remember the— Let me give you the citation and you can give us a short letter on it and ask Ms. Birch to do it also. It's 447 Fed 3rd 382. Just look that up and give us your comment on it because it's a case in which our court suggested that it would have been invited error where counsel acknowledged that it was a crime of violence. Thank you very much. I would also point to, on that question, United States v. Fletcher, which I think says when the defense concedes, it's unpublished, but what it says is the defense concedes that something is correct under the guidelines but does not appear to have recognized and intentionally foregone the challenge that's being raised on appeal, but that's not invited error. That if it's a concession merely because the defense counsel believes that's what's required of them, that that's not invited error. Meet plain error? Yes. And the other question that I think needs to be addressed— Well, in connection with that, counsel, because I guess your short response is yes, you could meet plain error, but you're urging that the documents, the conviction documents, are ambiguous. Is that right? That's right. And then we know that there was no contemporaneous objection. Right. So how was it so clear? Well— It's error. It's clear that ambiguity in these documents, that it's error to rely on an ambiguous document. I like that. The ambiguity is clear. The ambiguity is clear. Precisely. Clearly ambiguous. That's right. It's as though there were— Clearly ambiguous. Precisely. It's as though there were— I like that argument. It's as though there were a—we were reviewing a conviction below from a jury trial, and the only evidence of guilt was somebody that said, well, I think the defendant is guilty, or the defendant—I think that's probably the defendant, but I can't be sure. There would be some evidence of guilt in that situation, but I doubt that the court respectfully would say that that's not plain error. They would say—I would hope the court would say it's plainly below the standard of beyond a reasonable doubt. What's the consequence to your client of the consideration of this conviction? The consequence is that it changes the hypothetical guideline range that the district court calculated as part of— About 20 months. About 20 months, but, I mean, that's contested. The government believes it will be the same. But in connection with that, counsel, in this case we have a statement by the judge where he says, I want to be sure that his sentence is more than it was the last time, and he got 70 months the last time. Is that right? That's right. And then the judge, in this instance, gave him 71 months. That's right. So isn't that an indication that even if it went back on remand, I mean, what the judge said is, what I want to do is make sure he gets more than what he got the last time. I think the best— So that was influencing that sentencing decision, wasn't it, more than some determination or calculation on the guidelines? It was influencing it. I think the best way to read the court's reference to it has to be more than 70 months is that it was sort of a floor within the hypothetical guideline range that the district court had calculated, which was 61 to 74, 60 to 74. And so within that range, it needs to be more than 70, but we don't know what the district court would do if the range were smaller. I mean, I like the floor you just constructed, but the judge's floor was the one already constructed by the previous sentence. At least that's what the judge said. If we read the district court's comments that way, we would be nullifying all of the work, the very careful conscientious work characteristic of this judge in constructing hypothetical criminal history categories. If that same exercise of constructing hypothetical criminal history categories in excess of six were conducted at offense level 13 or a lower offense level, then the range would have been significantly smaller. Thank you. Mr. Page, there was another point you were trying to reach, but you got diverted on the plaintiff. Did you— It was precisely this. That was the one. Okay, fine. I was going to give you a little time on that. So you've saved time for rebuttal. Thank you. All right. Ms. Birch? May it please the Court. Amy Birch for the United States. And as a preliminary housekeeping matter, when I checked in this morning with the clerk, I handed the clerk a revised 28J letter that revises the one submitted Monday. There was a typo in that letter that changes the word from can to cannot, which changes the meaning of the sentence. And so it hasn't been officially filed, but we've provided that to you. And I'll come back to why that's important in a minute. But I wanted the Court to be aware of that. Yeah, I was wondering last evening when could possibly be the last 28J letter in this case. I really hope that that's the last one. Well, all right. Well, but I just told them to file another one. Oh. Follow up. They never stop. The error in this case, there was no error, and that's the bottom line. The state court judgment is not ambiguous. And the reason it's not ambiguous is because of the state court cases that we've raised in these 28J letters that say there can be an offense of conviction and the deadly weapon finding is a totally separate clerical-type thing that allows the state courts to decide things like, is this person going to be eligible for probation? How much of their sentence do they have to actually serve in terms of parole eligibility? And that those two things are not dependent on each other. And so a person can be convicted of aggravated assault with a deadly weapon and the court enter a no deadly weapon finding, which is what the Hooks case stood for. Now, what's interesting about that case is that the offense in that case occurred sometime in 1990. The offense in our case occurred in April of 89, and both are coming out of Dallas County. And so they're sort of progressing alongside one another. And it gives us a very clear idea that, at least at that time, the state courts understood that they could do this and that those two things were not dependent on one another. The other state court cases that end up going up for consideration, the court says, yeah, this sort of looks inconsistent, but what they don't say is, so therefore you must not have been convicted of the offense you were convicted for. What they say is, court, we want you to reform that judgment so that they both say, here's the offense of conviction, whether it was murder, whether it was aggravated assault with a deadly weapon, and here is underneath on the judgment the deadly weapon finding. So here, under Hooks, both of those things can be true. That is, no deadly weapon finding and aggravated assault with a deadly weapon. But even if the court said, eh, that's inconsistent, what the state court did about it was change the deadly weapon finding, not change the offense of conviction. Are you saying that under state law, the district judge has said for purposes of the sentences that the state is going to impose, there is no deadly weapon? For the purpose of calculating how that sentence will be carried out, yes, Your Honor, that's right. So the state law, a man stands convicted of an offense for which the state will not take into consideration that it's a deadly weapon for purposes of sentencing. And so now on the federal side, we're going to look to state law and say, yeah, that's what you guys do, but we're going to calculate it differently, that although the offense is committed here, the state exacts only a penalty and a sentence for without deadly weapon, we're going to treat it as a deadly weapon to enhance the sentence. Is that a fair application of our Shepard principles? Your Honor, it is a fair application, and the reason it's fair is because what Shepard says is we're going to look at the state documents to narrow to see what the person was actually convicted of, what is the offense of conviction. And the Shepard law specifically says we're not going to look at— That's for the purpose of determining the severity of the punishment, the crime that's convicted.  And severity is measured by the punishment and the punishment that can be imposed. What's happened is that we get told at the end of the day the state court has taken a deadly weapon conviction with a high exposure of sentence and taken away that exposure by making that notation. So my question is just the one I don't think I've ever encountered before, what do we do with that? I know what you—the position of the government is, of course. Well, what we do with that is we look at that indictment to narrow which section he is convicted of. What we don't do is say, well, gosh, he wasn't convicted of aggravated assault with a deadly weapon because he was. And under this court's precedent, aggravated assault with a deadly weapon, regardless of what sentence the state imposed or how they carried her out or how long the person had to serve, that is a crime of violence. It qualifies for the crime of violence enhancement. How is a crime of violence defined in the federal law? As the—it has to have an element that requires the use of force. And I don't have that language right in front of me, but it has to have an element that— It does not contain any element of the range of punishment imposed? Right. So that even if it were a misdemeanor under state law? I don't recall about—I don't recall the misdemeanor part. Normally this wouldn't come up. Right, I mean—sure. Assault with a deadly weapon is going to be a felony. But in this case, the aggravated—all the ways that the aggravated assault could happen was a third-degree felony. So there is no lesser included of aggravated assault plain. There were four ways it could be committed. One of those ways was with a deadly weapon. And to take that prong away, you're left with the other three, which are still aggravated assault, which are still third-degree felonies. If the judges put him on probation and got no time, then it still would count that. I don't know how the probation worked in the state sentencing scheme. Right. Hypothetically, the question of the state exacting— the conviction of a crime for which the state exacts no punishment other than the fact of a conviction, whatever that might entail, and then we turn around and treat that as a felony conviction. Right, because this Court says we're going to look at the offense of conviction. Because this Court has a way to give all of these documents meaning, they're just not ambiguous and there is no error. I'd like to turn to the argument that Mr. Sanchez's substantial rights were not affected here. First of all, the district court focused heavily on his criminal history. He has 24 criminal convictions, 20 of them received no criminal history points. The court talks for pages about all of these 3553A factors, the need to deter the punishment, the need to deter the defendant's crimes on page 71 of the record, the need to protect the public, the nature and circumstances of the offense, the history and characteristics of the defendant. And he specifically talks about the seriousness of all these DWI offenses and how those offenses present this danger to the public and the danger to the community. Yes. Yes, Your Honor. He's very thorough. And he creates all of these hypothetical criminal history categories when he's sentencing under this upward departure, saying that this sentence isn't sufficient. And you know what? If we move him to a criminal history category 7, that's not sufficient either. And he's doing it and he gets all the way up to where he wants to be, and that is 71 months. And then he sentences him to that 71 months. But several times he says, but even if I wasn't looking at this as an upward departure where the guidelines are tied, if the guidelines were just A factor among several to consider, this is the sentence I would still impose. And he specifically says that this is not a case that, quote, in my view would warrant a sentence lower than the one I'm going to impose, end quote. I don't know how much clearer the court could be to say this is the sentence I want to impose. And because the defendant can't demonstrate that there's this reasonable probability of a different sentence on remand, the district court sentence should stand. Judge Fitzwater also said that, in my view, the sentence must be more than the sentence he received last time. And that's just a fairness argument in terms of, as a criminal justice system in general, we sort of expect punishment to be incremental. And so if this defendant comes last time and gets 70 months and it doesn't stop him from coming back, doesn't stop him from coming back and being caught in the middle of a DWI again, a judge says, I'm not giving less for that, I'm just not, and imposes the 71-month sentence. Moreover, even if the court says, okay, we have error, and, okay, we think that error affected his substantial rights no matter what the judge said, this court still has the discretion to determine whether that error affects the reputation and integrity of judicial proceedings and to correct that. And here it just doesn't, and it doesn't for a couple of reasons. One is the judge did what all the parties asked him to do, and that is impose the crime of violence, even the crime of violence enhancement. And that's where I come to the sort of invited argument error, which is an argument, which is when the defense counsel didn't just gloss over it. It's not a matter of I just didn't see it in the PSR, I didn't file an objection. And this is a defense counsel that the judge was very complimentary about. So this is not a dig on defense. This is just saying that that person clearly believed that the enhancement applied and standing up in court and saying, you know, this 12 versus 16 makes it a little better, but it still doesn't make it all the way better. But your point is that no one would view that as unfair under the whole circumstance. When the public is casting its eye on judicial proceedings and the judge is doing what we're asking the judge to do, no one is going to find that unfair. And also this whole still idea about this incremental punishment, again,  And so there's nothing here that compels this court to intervene to change what happened. Well, actually, Judge Fitzwater, in going through each of the additional interim steps, did more than what our case law requires because we specifically said that it's nice if the court does that, but the court can actually skip some of those steps. Right. And the court was very careful, too, to say I've got this upward departure scheme, but also I would do the same thing as an upward variance. And in cases, you know, we have some judges in the Northern District of Texas that give you a one-sentence, you know, this is what I would do, 3553A of factors, punishment, deterrence, and we're done, and that's enough. And so here, where the court tries to do more, really tries to explain the sentence to the defendant, really tries to put into the record all of its reasoning. To hold those words against the court in any way just seems improper, particularly where the court did say as a variance, where that would just be one thing to consider, I would still find the same sentence. And for those reasons, we ask the court to affirm. Thank you, Ms. Birch. Mr. Page, you've saved time for rebuttal. Even if the state court authorized the practice of issuing these conflicting findings in the judgment, there are some good reasons not to use it, such a judgment, for federal sentencing purposes. The first one is that it would deprive the defendant of the benefit of his plea bargain. This is not simply a scrivener's error that deadly weapon, there's no deadly weapon finding. This is a bargained-for condition of a plea bargain in this case. And so now to treat the judgment as though it unambiguously established what the defendant bargained that it would not establish would deprive him of the benefit of that old plea bargain. And that reasoning is in Taylor at 601. Second, factually conflicting findings, even if authorized by state practice, are not a sufficiently reliable basis for a criminal history enhancement. The reason that the Shepard standard is so stringent is there are many reasons, but one of them is that criminal history enhancements tend to produce rather enormous increases in the sentence. It was maybe 20 months in this case, but in other cases, a career offender, et cetera, can be astronomical, and sometimes in statutory cases even implicate constitutional questions. While you have time, let's move ahead to the fourth prong. Let's assume that we've reached the fourth prong and we find that you've met the other three and that we're under plain error review. As you know, we exercise the fourth prong. The case law says that we do that only in rare and exceptional cases. Even if we decide it's not invited error but rather plain error review, which you at least acknowledge it's plain error review, on the fourth prong, how is it going to be viewed as unfair or affecting the integrity of judicial proceedings if we conclude that that prong isn't met where counsel did in fact acknowledge that it was a crime of violence? How would that be an unfair result? Well, counsel may have acknowledged that it would be a crime of violence, but she didn't ask that it be treated as a crime of violence. The question is can it be unfair to a defendant to reverse an error that everybody assumed was not an error at the time, and I think that's the simple classic plain error case that defense counsel doesn't see the error, and if that is enough to defeat the fourth prong, then it will be used less than very rarely but not at all. It would also point out that there's some countervailing factors into the fourth prong. The first is the consideration in Taylor that to deprive the defendant of the benefit of a prior plea bargain is unfair. Taylor uses the word unfair, and that if we decline to send this back because of the 70-month consideration, then in some ways we're potentially compounding the past error. A 70-month sentence likely suggests that the defendant received a 16-level last time, and if this error was present in the past case too, then it seems like that ought to be an equitable consideration in favor of a lesser sentence rather than a longer sentence. And if the Court has no further questions, that's all I have in rebuttal. All right. Thank you, Mr. Page. Your case is under submission. Next case, United States v. Sturtevant.